IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHERON THORNTON,

    *Plaintiff*,

    v.

DEPARTMENT OF PUBLIC SAFETY
AND CORRETIONAL SERVICES.

    *Defendant*.

Civil Action No. ELH-16-3028

## MEMORANDUM OPINION

Sheron Thornton has filed an employment discrimination case against the Maryland Department of Public Safety and Correctional Services ("DPSCS" or "Department").[1] In her Second Amended Complaint (ECF 11), plaintiff asserts claims against DPSCS for race discrimination (Count I) and sex discrimination (Count II), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") (ECF 11, ¶¶ 100-117); age discrimination (Count III), in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA") (ECF 11, ¶¶ 118-127); and retaliation (Count IV), in violation of the ADEA and Title VII. *Id.* ¶¶ 128-150. Plaintiff seeks, *inter alia*, $950,000 in compensatory damages; $950,000 in punitive damages; attorney's fees; and costs. *Id.* at 17-18.

---

[1] Plaintiff was self-represented when she filed the Complaint (ECF 1) on August 30, 2016. The Complaint also named as defendants Stephen T. Moyer, the Secretary of DPSCS; Joseph Clocker, Director of Parole and Probation at DPSCS; Brenda Miller, "Human Resources, DPSCS", and James Fox, "Employee Relations, Department of Budget and Management." ECF 1. Plaintiff also appended approximately 50 exhibits to the Complaint. While still self-represented, plaintiff filed her First Amended Complaint (ECF 3), adding Governor Larry Hogan and David Brinkley, Secretary of the Maryland Department of Budget and Management, as defendants. In her Second Amended Complaint (ECF 11), filed by counsel, Thornton sued only the Department.

The Department has moved to dismiss the Second Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). ECF 20. The motion to dismiss is supported by a memorandum of law (ECF 20-1) (collectively, "Motion") and an exhibit. ECF 20-2 (June 2, 2016, Charge of Discrimination) ("Charge"). The Department argues that the Court lacks jurisdiction to consider plaintiff's race, sex, and age discrimination claims because plaintiff has failed to exhaust her administrative remedies under the relevant statutes. ECF 20-1 at 9-14. In addition, defendant contends that plaintiff has failed to state a claim for retaliation. *Id.* at 14-22. Thornton opposes the Motion (ECF 25-2) ("Opposition), supported by an exhibit. ECF 25-3.[2] The Department has replied. ECF 29 ("Reply").

The Motion is fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall grant the motion as to counts I, II, and III and deny it as to Count IV.

## I.      Factual Background[3]

Thornton began working for the Department in October 1997. ECF 11, ¶ 13. In 2009, she was promoted to "Acting Field Supervisor I (Grade 17)." *Id.* ¶ 19. She received satisfactory performance evaluations from 2010 through 2016. *Id.* ¶ 17.

Thornton claims that in February 2010, she was "assaulted by her female Field Supervisor." *Id.* ¶ 20. As a result, Thornton filed a charge of assault and sexual harassment with "Regional Administrator Brown." *Id.* ¶ 21. However, "Brown failed to file Plaintiff's complaint

---

[2] ECF 25-3 is the same document as ECF 20-2.

[3] In view of the procedural posture of the case, I must accept as true the facts alleged in the Second Amended Complaint.

with EEO [sic] or request an investigation." *Id.* ¶ 22.[4]  Thornton also "filed criminal charges, as well as, charges with [the] EEOC [(Charge No. 531-2010-892C)] and the agency's internal EEO . . . office", alleging sexual harassment and assault. *Id.* ¶ 23.[5]  In April 2010, the EEOC "issued a probable cause finding of gender discrimination" (*id.* ¶ 24), and the Department moved plaintiff to another office. *Id.* ¶ 25.

In May 2010, the Department allegedly denied plaintiff training opportunities and denied her request to work secondary employment. *Id.* ¶ 26.  And, in June 2010, plaintiff was given "a counseling letter . . . for opposing discriminatory behavior." *Id.* ¶ 27.

A year later, in May 2011, Thornton filed a complaint with the EEO alleging harassment, denial of transfer, denial of promotional opportunity, and denial of secondary employment. *Id.* ¶ 28.  According to plaintiff, in July 2011 the Department's EEO director "advised Plaintiff to 'just shut up,' 'demote yourself,' and 'go back to being an agent.'" *Id.* ¶ 29.

Plaintiff claims that between July 2011 and November 2012, she interviewed for ten positions within the Department. *Id.* ¶ 32.  But, all of the positions were given to "employees outside of Plaintiff's protected classes of race and gender." *Id.*

In February 2012, Thornton filed a second charge with the EEOC (Charge No. 531-2012-365), alleging retaliation, harassment, and age discrimination. *Id.* ¶ 33.[6]  In January 2013,

---

[4] In her Second Amended Complaint, plaintiff frequently refers to "EEO" complaints.  I assume that these complaints were made to the Department's equal employment opportunity office.  *See* ECF 11, ¶ 23.

[5] Plaintiff does not state the outcome of the alleged criminal charges.  *See* ECF 11.

[6] In the Second Amended Complaint, plaintiff states that the second charge was filed in February 2011.  ECF 11, ¶ 33.  However, paragraph 33 occurs sequentially after the facts that allegedly occurred in 2011.  *See id.* ¶ 32.  And, the case number assigned by the EEOC to the second charge indicates that it was filed in 2012.  *See id.* ¶ 33.  Accordingly, I shall assume that the second charge was filed in February 2012 and not February 2011.

Thornton and the Department reached a settlement with respect to the two pending EEOC charges (Nos. 531-2010-892C and 531-2012-366), and those charges were dismissed. *Id.* ¶ 36; *see also* ECF 20-1 at 4 (explaining that the charges were dismissed pursuant to a settlement agreement). As part of the settlement, Thornton was promoted to "Facility Administrator (Grade 21)." ECF 11, ¶ 37. She was also transferred to the Department's Pretrial Services unit in Baltimore. *Id.* ¶ 39.

Plaintiff states that between June and August 2013, she received disparate "treatment, constant belittlement, and profanity laced insults from the other administrators because of her protected actions." *Id.* ¶ 43. In August 2013, she was reassigned to work with Assistant Warden Campbell, even though "everyone else on the team was being supervised by Warden Foxwell." *Id.* ¶ 40. Plaintiff was also issued a reprimand in August 2013. *Id.* ¶ 42. She filed a grievance and was allegedly told by an unidentified person, "'as long as you stay off that e-mail . . . you will be fine.'" *Id.* According to plaintiff, that person was referring to plaintiff's conduct of informing others about the harassment. *Id.*

Around May 2014, Thornton requested a transfer "back to Parole and Probation". *Id.* ¶ 45. Plaintiff alleges that, because of this request, she was "subjected to alienation, exclusion from executive meetings and email distributions, as well as, receiving lower evaluation scores." *Id.* Then, in July 2014, she "was placed in an office where urine and feces leaked from the segregation cells above . . . ." *Id.* ¶ 46.

According to Thornton, in October 2014 she was "compelled" to agree to a thirty day suspension, without pay. *Id.* ¶ 47. She states that she resigned rather than accept the suspension. *Id.* Plaintiff then filed a third charge with the EEOC (Charge No. 531-2015-262), claiming

retaliation, hostile work environment, and constructive discharge. *Id.* ¶ 48. Thornton received a right to sue letter in December 2014.

"In December 2014, plaintiff, under duress, fraud and coercion, was directed to sign a settlement agreement that demoted her, decreased her pay, waived her rights to appeal, and directed her to resign again." *Id.* ¶ 50. Thornton claims that "Director Miller" told her that she would not be reinstated because she had contacted representatives for help. *Id.* ¶ 51. And, in March 2015, Thornton was told "to remove her name from the reinstatement list for Field Supervisor I position, if she wanted to be reinstated for state service." *Id.* ¶ 53.

In March 2015, Thornton was transferred to the Department's office in Westminster, Maryland, which is "78 miles roundtrip" from Baltimore. *Id.* ¶ 54. At that office, one of Thornton's supervisors, whom she refers to as "Hubble", stated, "in response to Plaintiff's statement that she and another Black colleague were going into the field, 'Oh God, now I have to watch two Black girls.'" *Id.* ¶ 56.

Thornton was issued a "counseling record" in June 2015, for being "'profane and insolent' to an offender and disrespectful to the cleaning man." *Id.* ¶ 59. She claims that those allegations were untrue. *Id.* Plaintiff then filed an EEO complaint, citing harassment, retaliation, unfair practices, and race discrimination. *Id.* ¶ 60. Thereafter, in July 2015, Thornton was issued a "Level 1 reprimand" for various incidents. *Id.* ¶ 61. But, she claims that she was not even present in the office during one of the alleged incidents. *Id.* Plaintiff filed an additional harassment charge with the EEO in August 2015. *Id.* ¶ 63.

In August 2015, despite being on the "best qualified list", plaintiff was denied the privilege to interview for a Field Supervisor I position. *Id.* ¶ 64. In September 2015, plaintiff was denied a position with the "drug court", which she claims went to an individual with less

experience.  *Id.* ¶ 65.  Plaintiff then filed another EEO charge, claiming discrimination, harassment, and retaliation.  *Id.* ¶ 66,

On November 3, 2015, Thornton's supervisors told her that they were rescinding her reprimand and replacing it with counseling.  *Id.* ¶ 70.  Also in November 2015, plaintiff received "a concerns memorandum" after plaintiff told her supervisor about inaccuracies in her completion of an audit.  *Id.* ¶ 74.[7]

In February 2016, Thornton was denied a transfer to Baltimore City.  *Id.* ¶ 75.  In March 2016, Thornton applied for the position of Regional Administrator, but was told that she lacked the experience or credentials.  *Id.* ¶ 78.  And, in April 2016, plaintiff applied for the position of "Correctional Hearing Officer", but was told that she did not have the requisite experience.  *Id.* ¶ 79.  However, Thornton disputes the claim that she lacked the qualifications for the Correctional Hearing Officer position.  *Id.*

Thornton filed a fourth charge of discrimination with the EEOC on June 2, 2016 (Charge No. 531-2016-1551).  *Id.* ¶ 82; *see* ECF 20-2.  On the section of the Charge captioned "DISCRIMINATION BASED ON (*Check appropriate box(es)*)", plaintiff checked only the box for "RETALIATION".  *See* ECF 20-2 (capitals in original).  She did not check the boxes for "RACE"; "COLOR"; "SEX"; or "AGE".  *See id.*  Furthermore, in the section of the Charge captioned "DATE(S) DISCRIMINATION TOOK PLACE", plaintiff stated that the earliest date of discrimination occurred on November 17, 2015, and the last date of discrimination took place on March 1, 2016.  *See id.*  Of import here, Thornton did not check the box next to "CONTINUING ACTION".  *See id*.  And, in the description section of the Charge, plaintiff wrote, *id.*:

---

[7] It is not clear from the Second Amended Complaint whether plaintiff reported errors in plaintiff's own audit or in the audit of plaintiff's supervisor.  *See* ECF 11, ¶ 74.

I. I began my employment with the above listed Respondent in October 1997. My current position is Field Supervisor I. I am under the direct supervision of Kimble Hubble. During the course of my employment, I have filed EEOC Charge(s): 531-2010-00892, 531-2012-00365, and 531-2015-00262. As a result, I believe I have been subjected to harassment, unequal terms and conditions of employment, and disciplinary action in retaliation for filing. Most recently, on or about November 17, 2015, I was disciplined through issuance of a memorandum. In addition, in March 2016, I filed an appeal to challenge my work location assignment. I believe I continue to be subjected to harassment in retaliation for my actions and complaints.

II. Respondent failed to provide me with a valid reason for the disciplinary action of November 2015. I have not been given a response to my appeal challenging my assigned work location.

III. I believe I am being discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, regarding harassment; unequal terms and conditions of employment, and discipline based on retaliation.

Thornton claims that she was issued a "Notice of Suit Rights" letter with respect to the Charge. However, she has not specified the date she received the letter. *Id.* ¶ 8. And, no copy of the right to sue letter has been submitted to the Court.

On June 6, 2016, four days after Thornton filed her fourth charge of discrimination, Thornton filed a fifth charge of discrimination with the EEOC (Charge No. 531-2016-1742). *Id.* ¶ 86; *see* ECF 1-3 (Charge No. 531-2016-1742). In that charge, Thornton alleged retaliation for protected activities on the date of June 6, 2016, and denial of promotional opportunities. *See* ECF 1-3. As to the basis of the claim of discrimination, plaintiff checked only the box for "retaliation." *See id.* And, as to the "date(s) discrimination took place", plaintiff said that June 6, 2016, was both the earliest and latest date of discrimination. *See id.*

It does not appear that the Charge of June 6, 2016, is the basis for the claims in this lawsuit. *See* ECF 11, ¶ 7. In the "Administrative Procedure" section of her Second Amended Complaint, plaintiff states: "On June 2, 2016, Plaintiff filed a complaint against Defendant with the United States Equal Employment Opportunity Commission's (EEOC) in Baltimore District

Office alleging retaliation in violation of Title VII, 42 U.S.C. 2000(e)." *Id.* Plaintiff does not reference the Charge of June 6, 2016, in that section. Accordingly, I assume that the Charge of June 2, 2016, is the operative one.[8]

On December 6, 2016, during the pendency of this suit, plaintiff was informed that she was under investigation for fraternizing with an inmate. *Id.* ¶ 95. She states, *id.* ¶ 96:

> The investigator then said I have a recorded phone call from an inmate at Baltimore City Detention Center. He called you and you answered. Why did you lie to your supervisor? Plaintiff responded that she didn't lie, that the contact occurred in August, and that she hadn't seen or heard from him since. Plaintiff stated that she told the inmate not to call her. I told him I answered because I thought it might be my son. He never called again.

Thornton claims that the investigator said that he could see that the transcript said "'Don't call me.'" *Id.* ¶ 97.

Thornton was directed to go to her supervisor's office on December 15, 2016. *Id.* ¶ 98. Thornton's supervisor told her that he had recommended her termination. *Id.* "All the managers were there included [sic] the Field Supervisor II that assaulted and sexually harassed me in 2010." *Id.* Plaintiff was formally terminated on December 22, 2016. *Id.* at 99. According to Thornton, at the time of her termination, she was just one year short of retirement. *Id.* at 98.

## II.     Standards of Review

### A.  Rule 12(b)(1)

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A test of subject matter jurisdiction under Rule 12(b)(1) may

---

[8] Even if both charges are at issue, the disposition would be the same.

proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). A factual challenge can also assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Id*.

The Department brings a factual challenge because it argues that Thornton failed to exhaust her administrative remedies under Title VII and the ADEA. ECF 20-1 at 9-14. Therefore, the Department asserts that facts not included in the Complaint deprive the Court of subject matter jurisdiction as to the Title VII and ADEA claims.

In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov' t of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits.") (Citation omitted). In this regard, the Department has submitted plaintiff's Charge of Discrimination that forms the basis for this lawsuit. ECF 20-2; *see* ECF 11, ¶ 7.

## B.      Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty.*

*Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, ___ U.S. ____, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to

satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *accord King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also*

*Meridian Investments, Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 577 (4th Cir. 2017) ("A defendant's claim that an action is time-barred is an affirmative defense that it can raise in a motion to dismiss when the 'face of the complaint includes all necessary facts for the defense to prevail.'") (citation omitted). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman* ).

Under limited exceptions, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, and not the mere information

it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id*.

### III.    Discussion

As indicated, the Department urges dismissal of Count I, Count II, and Count III of the Second Amended Complaint on the ground that Thornton failed to exhaust her administrative remedies as to those allegations, as required by Title VII and the ADEA. ECF 20-1 at 9-14. And, defendant further argues that Thornton has otherwise failed to state a claim for retaliation in Count IV. *Id.* at 15-22.

### A.  Counts I, II, and III

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal–Tile Corp.*,

-13-

750 F.3d 413, 420 (4th Cir. 2014).  It also prohibits an employer from retaliating against an employee because the employee filed a grievance or complaint regarding an employment practice that allegedly violated Title VII's antidiscrimination provision.  *See* 42 U.S.C. § 2000e–3(a); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 415 (4th Cir. 2015).

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1); *see also Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

Under Title VII and the ADEA, a plaintiff must file a charge with the EEOC before filing suit in a federal court.  42 U.S.C. § 2000e–5(f)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA); *see Calvert Grp.*, 551 F.3d at 300.  This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible."  *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *see also Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 670 (4th Cir. 2015) ("We recognize that a primary objective of exhaustion requirements is to put parties on notice of the allegations against them.").

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit."  *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005).  Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'"  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).  "Allowing [the

EEOC] first crack at these cases respects Congress's intent . . . ."  *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).

An aggrieved person must file a complaint with the EEOC within 180 days of the alleged discrimination, except in a "deferral" jurisdiction, where the period is 300 days. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Maryland is a deferral state; the Maryland Commission on Civil Rights is the applicable State enforcement agency.[9]  *See, e.g.*, *Dewitt v. Clean Harbors Envtl. Servs., Inc.*, RDB-16-1705, 2017 WL 3116609, at *3 (D. Md. July 21, 2017); *Stennis v. Bowie State Univ.*, ___ F. Supp. 3d ___, 2017 WL 633312, at *3 (D. Md. Feb. 16, 2017).

The exhaustion requirements of Title VII and the ADEA also function as a jurisdictional bar in federal court, where plaintiffs have failed to comply with it.  In *Balas*, 711 F.3d at 406, the Court said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."  As to the ADEA, the Court has confirmed: "The same is true of claims made under the ADEA." *Calvert Grp.*, 551 F.3d at 300.

An aggrieved party who fails to comply with the applicable administrative procedures has failed to exhaust his administrative remedies and is generally barred from filing suit. *See, e.g.*, *Balas*, 711 F.3d at 407; *Miles*, 429 F.3d at 491; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).  Failure to comply generally mandates dismissal of a suit. *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

---

[9] The Commission was previously known as the Maryland "Commission on Human Relations." During the 2011 legislative session, the Maryland General Assembly approved a change in the name; it is now known as the Commission on Civil Rights. *See* 2011 Md. Laws, Chap. 580; *see also Bd. of Directors of Cameron Grove Condo., II v. State Comm'n on Human Relations*, 431 Md. 61, 64 n.3, 63 A.3d 1064, 1066 n.3 (2013).

Even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process. To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that agency." *Balas*, 711 F.3d at 408 (emphasis added); *see also Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation."); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."). Although courts "recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). Rather, courts are constrained by the four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof . . . .'" *Id.* at 407–08 (citations omitted).

However, "[t]he touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same . . . ." *Sydnor*, 681 F.3d at 595. The Court explained in *Sydnor*, *id.* at 594: "[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Accord Southpeak Interactive Corp. of Del.*, 777 F.3d at 669; *Calvert Group, Ltd.*, 551 F.3d at 300; *Evans*, 80 F.3d at 963.

The Fourth Circuit's opinion in *Jones v. Calvert Grp.*, 551 F.3d 297, provides guidance. In that case, plaintiff filed a charge with the Maryland Commission on Human Relations,

checking only the box for "retaliation." *Id.* She stated in the charge: "'I believe I am being forced to work in a hostile environment and subjected to differential treatment in retaliation for filing' [a prior] charge." *Id.*; *see id.* at 301. Plaintiff subsequently brought suit, alleging race and sex discrimination, in violation of Title VII. *Id.* at 299. She also alleged age discrimination, in violation of the ADEA, as well as retaliation. *Id.* The defendant moved to dismiss under Rule 12(b)(6). *Id.* After converting the motion to dismiss to a motion for summary judgment as to plaintiff's Title VII and ADEA discrimination claims, the district judge entered judgment in favor of the defendant. *Id.* at 299-300.

On appeal, the plaintiff claimed that the district court erred in granting summary judgment for failure to exhaust administrative remedies. *Id.* at 301. The Fourth Circuit disagreed, stating, *id.*:

> The . . . charge alleged that [plaintiff] was being retaliated against because she had filed [a previous] charge; it did not allege that she was discriminated against based on her age, sex, or race. Indeed, she checked only the "retaliation" box on her EEOC charge and left unchecked the boxes for "age," "sex," or "race."

The Court concluded, *id.*: "The district court therefore properly determined that [plaintiff] failed to exhaust her administrative remedies with regard to those claims."

*Belyakov v. Medical Science & Computing*, 86 F. Supp. 3d 430, 440 (D. Md. 2015), is also instructive. In *Belyakov*, plaintiff applied for a job with the National Institutes of Health through the defendant staffing firm. *Id.* at 432. When he did not get the job, plaintiff filed suit against defendant, alleging age discrimination under the ADEA, national origin discrimination under Title VII, and retaliation under Title VII. In granting summary judgment in favor of the staffing agency as to the national origin claim, the district judge said: "Belyakov did not check the box for national origin discrimination in his EEOC charge, nor did he claim national origin discrimination or allege any facts relating to his national . . . in the narrative portion of his EEOC

charge. . . ." *Id.* at 440. Instead, plaintiff "asserted only claims for, and alleged facts relating to, age discrimination in violation of the ADEA and retaliation in violation of Title VII . . . ." *Id.* Therefore, the court determined that plaintiff failed to exhaust his national origin claim. *Id.*; *see also Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 350 (D. Md. 2012) (finding that plaintiff failed to exhaust her administrative remedies as to discrimination on the basis of age because she did not "did not check the box for discrimination based on age, and there is no reference to age discrimination in the narrative portion of the document"); *Talbot v. Foodservice, Inc.*, 191 F. Supp. 2d 637, 640 (D. Md. 2002) (same, for disability discrimination).

Here, plaintiff's Charge does not reflect any allegations of discrimination on the basis of race, sex, or age. *See* ECF 20-2. As in *Calvert Grp.*, Thornton checked only the box next to "retaliation." *See id.* She did not check the boxes next to "race"; "color"; "sex"; or "age". *See id.* In addition, Thornton did not reference discrimination based on race, sex, or age in the description portion of the Charge. *See id.* Indeed, the text of the Charge makes it apparent that Thornton's complaints were premised solely on alleged retaliation based on her pursuit of previous EEOC charges. *See id.*

Nevertheless, in her Opposition, plaintiff advances two theories as to why the Court should consider her race, sex, and age discrimination claims, despite the fact that those claims do not appear on the face of her Charge. First, plaintiff claims that the allegations in her Charge are reasonably related to her claims in the Second Amended Complaint. ECF 25-2 at 10-12. Second, plaintiff asserts that her claims in the Second Amended Complaint are part of the same continuing violation. *Id.* at 12-14. For the reasons explained below, neither of these theories is persuasive.

There is no merit to plaintiff's claim that the allegations of race, sex, and age discrimination in the Second Amended Complaint are reasonably related to the claim in the Charge. The Charge cannot reasonably be read to provide notice that plaintiff asserted claims based on race, sex, or age discrimination. *See Calvert Grp.*, 551 F.3d at 301. Plaintiff's claims in her Charge expressly pertain only to retaliation. *See* ECF 20-2. For example, plaintiff said: "During the course of my employment, I have filed EEOC Charge(s): 531-2010-00892, 531-2012-00365, and 531-2015-00262. ***As a result***, I believe I have been subjected to harassment, unequal terms and conditions of employment, and disciplinary action ***in retaliation for filing***." *Id.* (emphasis added). And, she stated: "I believe I am being discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, regarding harassment; unequal terms and conditions of employment, and discipline ***based on retaliation***." *Id.* (emphasis added). Although a self-represented plaintiff's assertions are generously construed, the form speaks volumes. The task of checking boxes is not onerous; plaintiff never checked the boxes on the form for race, age, or sex discrimination.

The retaliation claim is not reasonably related to discrimination based on race, age, or sex. Stated differently, the Charge did not provide defendants with notice of claims of age, race, and sex discrimination. Thus, plaintiff failed to exhaust her administrative remedies as to her claims of discrimination based on race, sex, and age. *See Sydnor*, 681 F.3d at 595; *Calvert Grp.*, 551 F.3d at 300.

In addition, the continuing violation doctrine is inapplicable here. Plaintiff did not assert in the text of the Charge that the conduct complained of was ongoing. ECF 20-2. Nor did she check the "continuing action" box on the Charge. *Id.* Nevertheless, even if plaintiff had checked the continuing action box on the Charge, the continuing violation doctrine would not apply.

The Supreme Court adopted the continuing violation doctrine in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In *Morgan*, plaintiff sued Amtrak under Title VII, alleging that he had been subjected to various discrete discriminatory and retaliatory acts, and had additionally experienced a racially hostile work environment throughout his employment. 536 U.S. at 104. Plaintiff filed a charge with the EEOC alleging that he was "'consistently harassed and disciplined more harshly than other employees on account of his race.'[]" *Id.* at 105. However, many of the alleged discriminatory events that plaintiff complained of took place outside of Title VII's 300-day time for filing a charge with the EEOC. *Id* at 106. Amtrak filed a motion for summary judgment as to all of the events that took place outside of the filing period, which the district court granted. *Id.*

The Ninth Circuit reversed, applying the continuing violation doctrine. *Id.* at 106-07. That court determined that a plaintiff may sue on claims that were filed with the EEOC outside of the period established by Title VII if the claims were part of a series of related acts; some of the acts took place within the limitations period; and the plaintiff shows that there is a systematic policy or practice of discrimination, part of which operated within the limitations period. *Id.* at 107. The Ninth Circuit determined that each of plaintiff's three Title VII claims (*i.e.*, discrimination, hostile work environment, and retaliation) was sufficiently related to the post-limitations conduct to establish a continuing violation. *Id.* at 107-08.

The Supreme Court reversed the Ninth Circuit, in part. With respect to plaintiff's claims for discrete discriminatory and retaliatory acts, the Court stated that a party "must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Id.* at 110. The Court explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. And, "[e]ach

discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* The Court

went on to define actions that qualify as discrete, stating, *id.* at 114:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." Morgan can only file a charge to cover discrete acts that "occurred" within the appropriate time period.[]

However, the Court affirmed the Ninth Circuit as to plaintiff's claim for hostile work

environment. 536 U.S. at 115. The Court observed that, unlike discrete acts, hostile work

environment claims occur "over a series of days or perhaps years . . . ." *Id.* And, the Court said

that, with respect to hostile work environment claims, "a single act of harassment may not be

actionable on its own." *Id.* Thus, for hostile work environment claims, the Supreme Court

concluded, *id.* at 117: "It does not matter, for purposes of [Title VII], that some of the component

acts of the hostile work environment fall outside the statutory time period." The Court

continued, *id.*: "Provided that an act contributing to the claim occurs within the filing period, the

entire time period of the hostile environment may be considered by a court for the purposes of

determining liability.[]"

The *Morgan* Court also provided guidance as to the type of conduct that creates a hostile

work environment. In general, Title VII is violated on the basis of a hostile work environment

where "'the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that

is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create

an abusive working environment' . . . ." *Id.* at 116 (quoting *Harris v. Forklift Systems, Inc.*, 510

U.S. 17, 21 (1993)). Factors include "'the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.'" *Morgan*, 536 U.S. at 116 (quoting *Harris*, 510 U.S. at 23).

In *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 221 (4th Cir. 2016), the Fourth Circuit articulated the requirements to prevail on a claim of hostile work environment:

> "[A] plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer."

(Quoting *Okoli v. Cty. of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)); *Accord Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc); *Chadha v. Northrop Grumman Sys. Corp.*, RDB-16-1087, 2017 WL 3226861, at *3 (D. Md. July 31, 2017).

The Court has also "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008); *accord Strothers v. City of Laurel, Md.*, 118 F. Supp. 3d 852, 864 (D. Md. 2015). In *Sunbelt Rentals*, the Court said, 521 F.3d at 315-16 (alterations in *Sunbelt Rentals*):

> Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than "rude treatment by [coworkers]," *Baqir v. Principi,* 434 F.3d 733, 747 (4th Cir. 2006), "callous behavior by [one's] superiors," *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003), or "a routine difference of opinion and personality conflict with [one's] supervisor," *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 276 (4th Cir. 2000), are not actionable under Title VII.

Here, the continuing violation doctrine is inapplicable because plaintiff complains of discrete events; did not assert a claim for a hostile work environment in her Second Amended Complaint; and did not exhaust a claim for hostile work environment.

As the Supreme Court said in *Morgan*, 536 U.S. at 114, discrete events include termination, failure to promote, denial of transfer, and refusal to hire. To be sure, Thornton alleges such acts in her Second Amended Complaint. *See* ECF 11. For example, Thornton has alleged failure to hire (*id.* ¶¶ 32, 64, 65, 78, 79); disciplinary actions (*id.* ¶¶ 27, 42, 59, 61, 88); insults (*id.* ¶¶ 43, 44, 56); denial of transfer (*id.* ¶¶ 75, 81); and termination (*id.* ¶ 98). Moreover, these events allegedly occurred over a period of more than six years. Although "magical" or "precise" words are not required to state such a claim, *see Stevenson v. City of Seat Pleasant, Maryland*, 743 F.3d 411, 418 (4th Cir. 2014), and plaintiff has alleged discrete events, she has not alleged that the discrimination was constant or ongoing. *See* ECF 11. Nor has she asserted that the alleged discrimination was "sufficiently severe or pervasive to alter [her] conditions of employment and to create an abusive work environment." *Guessous*, 828 F.3d at 220; *see also Morgan*, 536 U.S. at 116. Thus, plaintiff has not alleged in her Second Amended Complaint that she was subjected to a hostile work environment.

Even if plaintiff had alleged in her Second Amended Complaint that she was subjected to a hostile work environment, she did not exhaust that claim. As plaintiff sees it, "[w]here discriminatory actions continue after the filing of an EEOC complaint . . . the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints and restarting the 180 day waiting period." ECF 25-2 at 13 (citing *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 966 (3rd Cir. 1978) and *Ostapowicz v. Johnson*, 541 F.2d 394, 399 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041 (1977)). But, that precept is not applicable to the circumstances attendant here.

The Fourth Circuit has explained that although the contents of a charge do not "strictly limit" a subsequent lawsuit, a plaintiff's claims in her judicial complaint must "*reasonably relate*

to her EEOC charge" and must "be expected to follow from a reasonable administrative investigation." *Sydnor*, *supra*, 681 F.3d at 594 (citation omitted); *see also Miles*, 429 F.3d at 491 ("[T]he scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.") (citation and quotations omitted); *Hicks*, 572 F.2d at 966 ("Once a charge of some sort is filed with the EEOC, this court has held that the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .'") (citation omitted); *Ostapowicz*, 541 F.2d at 398–99 ("Courts have generally determined that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . , including new acts which occurred during the pendency of proceedings before the Commission . . . .").

Here, a reasonable administrative investigation into the Charge would not have looked to a hostile work environment based on pervasive race, sex, or age discrimination, because plaintiff did not check the appropriate boxes on the Charge form or otherwise complain of such discrimination in her written text. *See* ECF 20-2. To the contrary, plaintiff complained *only* of retaliation, and the EEOC could only have reasonably investigated claims involving the alleged retaliation.

To the extent that plaintiff claims that she is suing based on earlier EEOC charges, she fares no better. Plaintiff had to file suit within 90 days following the receipt of a right to sue letter. *See* 29 U.S.C. § 626(e); 42 U.S.C. § 2000e-5(f)(1). The continuing violation doctrine does not resuscitate time-barred *charges*, as plaintiff seems to argue. Rather, the doctrine enables the litigation of timely charges where some of the *claims* within the charge are time-

barred.  *See Morgan*, 536 U.S. at 114 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

In view of the foregoing, I shall grant the motion to dismiss counts I, II, and III of the Second Amended Complaint for failure to exhaust administrative remedies, because plaintiff failed to allege race, sex, and/or age discrimination in her Charge to the EEOC.  *See* ECF 20-2.

## B.  Count IV

The Department has also moved to dismiss plaintiff's claim for retaliation for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  DPSCS urges dismissal on two grounds: first, that Thornton has failed to identify any adverse employment action that she suffered as a result of her protected activities; and second, that plaintiff has failed to allege facts sufficient to establish causation.  ECF 20-1 at 16-22.

Plaintiff does not allege acts of direct discrimination.  Therefore, at a trial, her claims would be evaluated under the *McDonnell Douglas* framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (stating that the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination"); *see also Smyth-Riding v. Sciences And Engineering Services, LLC*, ___ Fed. App'x ___, 2017 WL 3531416, at *5 (4th Cir. Aug. 17, 2017) ("Retaliation claims can be proven by two avenues: one path looks to direct or circumstantial evidence of discriminatory motive while the other proceeds under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).").

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted).  Under the *McDonnell Douglas* approach, the plaintiff must first establish a

"prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). In a retaliation case, the Fourth Circuit has said that, to establish a prima facie case of discrimination under Title VII, a plaintiff must show: "'(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto*, 786 F.3d at 281 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)); *see also Lovett v. Cracker Barrel Old Country Store, Inc.*, ___ Fed. App'x ___, 2017 WL 2894424, at *2 (4th Cir. July 7, 2017); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, ___ U.S. ___, 132 S. Ct. 1327 (2012). The same elements are applicable in the context of a claim of retaliation under the ADEA. *Johnson v. Mechanics & Farmers Bank*, 309 Fed. App'x 675, 684 (4th Cir. 2009) (per curiam).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle*, 650 F.3d at 336; *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Hurst v. District of Columbia*, 681 Fed. Appx. 186, 190 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant" and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. The plaintiff must then prove, by a preponderance of evidence, "that the proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional

discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor*

*Ctr.*, 509 U.S. at 516-20; *Smyth-Riding*, 2017 WL 3531416, at *5 ("In a burden-shifting case,

[plaintiff] meets her ultimate burden at the third stage of the analysis by showing pretext.");

*Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir.

2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove

'both that the reason was false, and that discrimination was the real reason.'") (quoting *Jiminez v.*

*Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original)).   In other

words, under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial]

never 'shifts' from the plaintiff" to prove intentional unlawful discrimination.   *Williams v.*

*Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted).

Notably, if the defendant does not submit evidence of a legitimate basis for its actions,

the fact-finder may "infer discriminatory animus because experience has proved that in the

absence of any other explanation it is more likely than not that those actions were bottomed on

impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978).

And, if the defendant fails to meet the burden of producing "evidence which, taken as true,

would permit the conclusion that there was a nondiscriminatory reason for the adverse action,"

then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*,

509 U.S. at 509 (emphasis in original).   This is because a legal presumption of intentional

discrimination has been established.   *Id.* at 510 n. 3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he

allocation of burdens and the creation of a presumption by the establishment of a prima facie

case is intended progressively to sharpen the inquiry into the elusive factual question of

intentional discrimination.").

These approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. As explained below, at the motion to dismiss stage, these approaches merely serve to inform a court's evaluation of the allegations. *See Pettis v. Nottoway Cnty. Sch. Bd.*, 592 Fed. Appx. 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas* . . . .").

In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1162 (2016).

But, as the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal* and *Twombly*. *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of *Twombly* is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684; *accord Woods*, 855 F.3d at 647.

In *Woods*, 855 F.3d at 648, the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss", the "pleading standard established in *Iqbal* and *Twombly* applies . . . ." The question at the motion to dismiss stage is whether plaintiff has stated "a plausible claim for relief under Title VII or the ADEA . . . ." *Ciociola v. Baltimore City Bd. of Sch. Commissioners*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016). Therefore, at a minimum, plaintiff must plead facts that make it plausible that she was subjected to retaliation as a result of her protected activities. *See id.*

I turn to the elements of the *prima facie* case for guidance, mindful of the fact that this case is at the motion to dismiss stage. As to the first element of the *prima facie* case for retaliation, there is no dispute that plaintiff engaged in various protected activities. *See* ECF 20-1. The Motion turns on the second and third elements, *i.e.*, whether plaintiff suffered an adverse employment action and whether the allegations are sufficient to establish a causal link between the protected activities and the adverse employment action. *Boyer-Liberto*, 786 F.3d at 281.

An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Single acts that may not be cognizable as adverse actions on their own may, over time, cumulatively amount to an unlawful employment practice when they amount to a hostile work environment. *Morgan*, 536 U.S. at 115; *see also Harris*, 510 U.S. at 21; *Hoyle,* 650 F.3d at 333–34.

The Supreme Court has explained that the definition of "adverse employment action" in the context of a claim for retaliation is not limited to the definition as used in the context of a substantive discrimination claim. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("*BNSF*"). Rather, "the adverse action component of Title VII's antiretaliation provision can be satisfied by showing that the employer took 'materially adverse' action in response to an employee engaging in a protected activity, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Williams v. Prince William Cnty., Va.*, 645 Fed. App'x 243, 245 (4th Cir. 2016) (quoting *BNSF*, 548 U.S. at 68). Conduct as seemingly "trivial" as a "change in an employee's work schedule" or a "supervisor's refusal to invite an employee to lunch" may, under some circumstances, constitute adverse employment actions in the context of retaliation. *BNSF*, 548 U.S. at 69. This standard has also been applied in the context of the ADEA. *See Harman v. Unisys Corp.*, 356 Fed. App'x 638, 641 (4th Cir. 2009); *Taylor v. Burwell*, PWG-13-1998, 2014 WL 3547337, at *10 (D. Md. July 16, 2014); *Enoch v. Advanced Bioscience Labs., Inc.*, JKB-12-3701, 2014 WL 109065, at *3 (D. Md. Jan. 10, 2014), *aff'd*, 574 Fed. App'x 247 (4th Cir. 2014) (per curiam).

With respect to the causation element, plaintiff must show that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Smyth-Riding*, 2017 WL 3531416, at *5. "A plaintiff who can show that retaliation 'was the real reason for the [adverse employment action],' . . . will necessarily be able 'to show that the harm would not have occurred in the absence of - that is, but for - the defendant's conduct' . . . ." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (citations omitted) (alteration in *Foster*).

Ordinarily there must exist "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005); *see also Bowman v. Baltimore City Bd. of Sch. Commissioners*, 173 F. Supp. 3d 242, 249 (D. Md. 2016). Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'" *Constantine*, 411 F3d at 501 (citation omitted) (alterations in *Constantine*).

In *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), the Fourth Circuit called it a "very close question" where there was a nine to ten month delay between plaintiff's protected activity and the alleged adverse employment action, but where the delay was made more reasonable based on other circumstances. But, one court has said that "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)).

Notably, "[e]vidence of 'the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish" the causation element of a retaliation claim . . . ." *Smyth-Riding*, 2017 WL 3531416, at *5 (citation omitted). This is because "'by definition, an employer cannot take action because of a factor of which it is unaware.'" *Id.*

Defendant argues that plaintiff has not adequately alleged that she suffered an adverse employment action. ECF 20-1 at 18. According to the Department, the "vast majority" of the alleged retaliatory acts "do not rise to the level of materially adverse employment action necessary to state a claim of retaliation." *Id.* In particular, the Department claims that the

following actions do not constitute materially adverse employments actions: receipt of a "concern memorandum"; "providing instruction to an employee"; "declining to reassignment [sic] or transfer of an employee"; and negative comments of supervisors that produce "no actual injury or harm." *Id.* at 18-19 (internal quotations omitted).

In addition, the Department asserts that plaintiff has failed to show a causal connection between her protected activities and the alleged adverse employment actions. *Id.* at 19-22. The Department argues that the Court cannot find a temporal connection because plaintiff filed so many complaints that "the temporal proximity of those complaints to any specific action she identifies as retaliation is simply too amorphous and attenuated to create the presumption that the action was motivated by her complaints." *Id.* at 21. In addition, the Department claims that with respect to the positions that plaintiff applied for but did not receive, plaintiff did "not even allege[] that the decision makers for those positions were aware of her complaints of discrimination." *Id.* And, DPSCS points out that "months" passed between Thornton's June 2016 Charge and her termination in December 2016. ECF 67 at 9.

In her Opposition, plaintiff counters that she has stated a claim for relief for retaliation. ECF 25-2 at 14-17. In plaintiff's view, she has pointed to "a plethora of retaliatory acts DPSCS has directed toward Plaintiff." *Id.* at 14. Moreover, plaintiff points out that she is not required to plead a *prima facie* case under *McDonnell Douglas* to survive a motion to dismiss. *Id.* at 15-16. Furthermore, plaintiff claims that she has stated a claim based on her termination. *Id.* at 17. In particular, plaintiff notes that she engaged in a protected employment action by filing her June 2016 Charge; she suffered an adverse employment action when she was terminated in December 2016; and causation can be inferred through the temporal proximity of the Charge and her termination. *Id.* at 17.

As explained below, in view of the limited role of the *McDonnell Douglas prima facie* framework at the motion to dismiss stage, as provided in *McCleary-Evans*, 780 F.3d at 584, and *Woods*, 855 F.3d at 646-47, plaintiff has adequately plead that she suffered retaliation as a result of her protected activities.

Although many of the actions that Thornton complains of may not have individually constituted "adverse employment actions" in the context of a substantive discrimination claim, taken as a whole, the Court can infer that at least some of the Department's actions were attempts to dissuade Thornton from making or supporting charges of discrimination. *Williams*, 645 Fed. App'x at 245. Among other things, plaintiff has complained of being transferred to a distant office; moved to a workspace leaking with human excrement; and was unfairly disciplined. *E.g.*, ECF 11, ¶¶ 46, 54, 61, 74-76. She has alleged that the Department refused to promote her, refused to provide her with training, and refused to hire her for other positions. *Id.* ¶¶ 64, 65, 78, 79. And, plaintiff alleges that ultimately she was wrongfully terminated in December 2016. *Id.* ¶ 99. Given these claims, Thornton has adequately alleged that the Department undertook actions to "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *BNSF*, 548 U.S. at 64.

Moreover, viewing the facts in the light most favorable to plaintiff, she has adequately pleaded causation. DPSCS states: "Ms. Thornton was consistently filing complaints of discrimination throughout her tenure with the Department . . . ." ECF 20-1 at 21. However, contrary to defendant's conclusion that the number of individual complaints makes it too attenuated that any single complaint led to the actions about which she complains, the actions can be looked at as an effort generally to dissuade plaintiff from engaging in her protected activities. Although there was a six-month gap between plaintiff's June 2016 Charge and her

termination in December 2016, the Court cannot conclude on a motion to dismiss that there is no causation.  *See Price*, 380 F.3d at 213.  At this early stage, plaintiff has met the minimum requirements for stating a claim of retaliation.

In sum, plaintiff has alleged facts sufficient to state a plausible claim for retaliation under Title VII and the ADEA.  Accordingly, the Department's Motion shall be denied as to Count IV.

### IV.    Conclusion

In view of the foregoing, the Court lacks jurisdiction to consider plaintiff's claims in counts I, II, and III because plaintiff failed to exhaust her administrative remedies as to those claims, as required by Title VII and the ADEA.  Thus, I shall dismiss those counts, without prejudice.[10]  Because plaintiff has plausibly alleged a claim for retaliation under Title VII and the ADEA, I shall deny the Motion as to Count IV.

An Order follows, consistent with this Memorandum Opinion.

Date:  August 18, 2017                                            _____/s/_____
                                                                 Ellen Lipton Hollander
                                                                 United States District Judge

---

[10]  "'A dismissal for . . . [a] defect in subject matter jurisdiction[] must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.'"  *Platts v. O'Brien*, ___ Fed. App'x ___, 2017 WL 2703595, at *1 (4th Cir. June 22, 2017) (citation omitted) (alterations in *Platts*).