IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHERON THORNTON,              *

                  *

        Plaintiff,         *

                  *

        vs.             *      Civil Action No.  ADC-16-3028

                  *

DEPARTMENT OF PUBLIC SAFETY   *

AND CORRECTIONAL SERVICES,    *

                  *

        Defendant.      *

                  *

* * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Defendant, Department of Public Safety and Correctional Services ("Defendant"), moves this Court for summary judgment (the "Motion") (ECF No. 63). Defendant seeks a ruling from the Court that *pro se* Plaintiff Sheron Thornton cannot prevail on her retaliation claim against Defendant because she cannot demonstrate the required elements of the claim. ECF No. 63 at 1–2. Plaintiff filed an opposition to Defendant's Motion (ECF No. 66) and later filed the Motion for Leave to Amend Opposition to Summary Judgment (ECF No. 71). Defendant did not file a reply and the time to do so has since passed. After considering the Motion and response thereto, the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted by the parties, the Court finds that there is insufficient evidence from which a jury could find in Plaintiff's favor on the retaliation claim. Accordingly, the Court will GRANT Defendant's Motion (ECF No. 63). Because this Court will grant Defendant's Motion, the other pending motions, Plaintiff's Motion to Compel (ECF No. 56) and Motion for Leave to Amend Opposition to Summary

Judgment (ECF No. 71),[1] are DISMISSED as MOOT.

## FACTUAL BACKGROUND

This lawsuit arises out of Plaintiff's allegation of retaliation against her former employer, the Department of Public Safety and Correctional Services ("DPSCS"), in violation of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act ("ADEA"). The facts are viewed in a light most favorable to Plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Plaintiff, an African-American, was employed with DPSCS from May 1997 until her termination on December 22, 2016. ECF No. 63-7 at 2, ¶ 4; ECF No. 63-8 at 1. During that time, Plaintiff held several positions within DPSCS: Arrest Booking Officer at the Baltimore City Central Booking and Intake Center from May 1997 to October 1997; Parole and Probation Agent I with promotions to Parole and Probation Agent II and Parole and Probation Agent Senior with the Division of Parole and Probation ("DPP") from October 1997 until July 2010; Field Supervisor I with DPP from July 2010 until March 2013; and Facility Administrator with the Division of Pretrial Detention and Services from March 2013 until October 17, 2014, when she resigned. ECF No. 63-8 at 1–2; ECF No. 66 at 1–2. Plaintiff then sought and received reinstatement to state service as a Parole and Probation Agent Senior on March 18, 2015 with the DPP office located in Westminster, Maryland. ECF No. 63-8 at 2.

Plaintiff's claim of retaliation stems from a series of alleged actions by DPSCS that occurred over the course of at least six years, from 2010 until her termination in 2016. *See* ECF No. 66. Because many of these allegations are time-barred, as explained further below, the Court

---

[1] Even if the Court considered Plaintiff's amended opposition, the disposition would be the same.

will address only the factual background pertinent to the pending Motion, which includes allegations made on or after August 7, 2015 while Plaintiff was working as a senior parole and probation agent in the DPP Westminster office. Plaintiff's allegations primarily relate to denial of promotions, denial of a transfer request, and termination.

### A. Alleged Denial of Promotions

The Recruitment, Examination and Retention Unit manages the recruitment and hiring processes for all DPSCS units and divisions. ECF No. 63-3 at 1, ¶ 2. Applications for employment with DPSCS are collected and processed through JobAps, "the Maryland State web-based recruitment and applicant tracking system." *Id.* Once received through the JobAps program, applications are reviewed by the Unit's Human Resources analysts to determine if a position's qualifications are met. *Id.* at 2, ¶ 3. These analysts independently evaluate a candidate's application and determine whether the candidate meets the requisite qualifications without contacting or discussing a candidate with management or employees or investigating whether a candidate has engaged in protected activity. *Id.*

On August 28, 2015, Plaintiff submitted an application for reinstatement to the position of Field Supervisor I. ECF No. 63-4 at 3. According to Plaintiff's JobAps application history, Plaintiff was eligible for reinstatement and was scheduled for an interview for the position. *Id.* On March 9, 2016, Plaintiff applied for a Parole and Probation Regional Administrator position through JobAps. *Id.* Her application was evaluated by Sandra Regler, Human Resources Administrator IV, who determined that Plaintiff did not meet the qualification requiring six years of experience in parole and probation work including two years with administrative or supervisory responsibility. ECF No. 63-3 at 2–3, ¶ 5; ECF No. 63-5. In a letter dated July 22, 2016, Alicia Coleman, Human Resources Administrator I, informed Plaintiff of the conclusion of her

application. ECF No. 63-3 at 3, ¶ 5; ECF No. 63-5. Finally, on April 7, 2016, Plaintiff applied for a Correctional Hearing Officer I position through JobAps. ECF No. 63-4 at 3. The application was evaluated by Sharon Grant, Human Resources Officer III, who concluded that Plaintiff did not meet the minimum experience required for the position. ECF No. 63-3 at 3, ¶ 6; ECF No. 63-6. In a letter dated June 24, 2016, Ms. Grant informed Plaintiff of the conclusion of her application. ECF No. 63-6.

### B. Alleged Denial of Transfer Request

Upon her reinstatement to state service on March 18, 2015, Plaintiff was assigned to the DPP office in Westminster, Maryland. ECF No. 63-8 at 2. Prior to her assignment in Westminster, Plaintiff had worked in Baltimore City for the entirety of her career. ECF No. 66 at 5–6. On January 10, 2016, Plaintiff sent a formal request for transfer to an office in the Baltimore City (Central) Region to the Regional Administrator, Dale Maselli. ECF No. 66, Ex. B. In her request, Plaintiff stated:

> I am requesting a hardship as my home was in foreclosure and I had moved out before I beg[a]n employment in Westminster. However[,] I have regained rights to said property, and will be living in Baltimore. I am also in fear of the harassment that I have encountered that has continued despite my voicing my concerns. As a result, I have had to seek medical attentions thus my health is being affected.

*Id.*

On February 11, 2016, Plaintiff sent an email to Walter Nolley, Regional Administrator for the Central Region, inquiring about the status of her transfer request. *Id.* Plaintiff reiterated the hardship that her commute placed on her: "My commute from Baltimore to Westminster is, round trip 70 miles per day, and this is very taxing on my already 13 year[ ] old vehicle." *Id.* Plaintiff's request was ultimately referred to the Manager of the Employee Relations Unit, Glendell

Adamson, for assessment. ECF No. 63-11. In a memorandum dated March 11, 2016, Ms. Adamson utilized the Voluntary Transfer Policy, a policy that became effective for all DPSCS uniformed officers and parole and probation agents on August 14, 2015, to analyze Plaintiff's request. *Id.* at 4–6; ECF No. 63-12. Sections I, II, and VII of the Voluntary Transfer Policy were deemed applicable to Plaintiff's request and state:

> I.    This policy applies to all Uniformed Officers and Parole and Probation Agents who voluntarily request to transfer from one work assignment to another work assignment within DPSCS.

> II.   An employee must have two years of service that includes the probationary period in their current position and location before requesting an initial transfer.

>       . . . .

> VII.  Under circumstances of extreme hardship, the Deputy Secretary for Operations may make an exception to the two year waiting period. Such hardships must be documented and must have developed subsequent to the employee accepting their current position. Under no circumstances will pre-existing conditions/circumstances or commuting distance be considered as reason for transfer prior to the two year requirement.

ECF No. 63-12 at 3–4. Based on these provisions, Ms. Adamson found that "[Plaintiff]'s request for a voluntary transfer based on hardship is inconsistent with the letter and spirit of the Department's Voluntary Transfer Policy" and recommended that Plaintiff's request be denied. ECF No. 63-11 at 5–6. Specifically, Ms. Adamson noted that Plaintiff did not satisfy Section II of the policy because she had not been assigned to the Westminster office for the required two years or Section VII of the policy because the circumstances leading to her hardship did not occur subsequent to accepting the position in Westminster. *Id.* at 5. Ms. Adamson also noted that she found "no evidence that [Plaintiff] had been previously involuntarily reassigned, as her assignment

to the Westminster field office was based on the needs of the agency at the time of her reinstatement." *Id.* Based on this assessment, Plaintiff's request for transfer was denied. ECF No. 63-7 at 4, ¶ 10. Thereafter, Plaintiff filed a grievance challenging the denial of her transfer request and her case was referred to an Administrative Law Judge ("ALJ") with the Office of Administrative Hearings ("OAH"). *Id.*; ECF No. 63-13. In a written decision dated August 16, 2016, the ALJ dismissed Plaintiff's grievance. ECF No. 63-13. Plaintiff petitioned the Circuit Court for Baltimore County for review, but her petition was dismissed for being untimely filed. ECF No. 63-14.

### C. Termination

All DPSCS employees are required to comply with the DPSCS Standards of Conduct and Internal Administrative Disciplinary Process ("DPSCS Standards of Conduct") as well as Executive Directives. ECF No. 63-7 at 2, ¶ 5. Several provisions of the DPSCS Standards of Conduct and Executive Directive ADM.050.0043, titled "Employee and Inmate Visiting and Communication," prohibit employees from having contact with inmates in correctional facilities, offenders, or other clients except for business purposes. *Id.*; ECF No. 63-8 at 6. Pursuant to Section II.DD of the DPSCS Standards of Conduct:

> (1) An employee may not visit the homes of inmates, offenders or clients, relatives of inmates, offenders or clients, or known friends of inmates, offenders or clients for any purpose other than official Agency business. If such visit is necessary, prior written approval from the appointing authority or designee shall be obtained and made a matter of record. Such contacts shall be handled in an objective and professional manner.

> (2) An employee may not contact or visit inmates at any correctional facility, regardless of whether he/she is on or off duty, for any purpose other than official Department business. The exception to this shall be for an employee who is related to the inmate. Any request for permission to visit

6

> relatives shall be approved by both the employee's appointing authority or designee and by the appointing authority o[r] designee of the institution or facility where the relative is incarcerated.
>
> (3) An employee may not become socially, personally, or intimately involved in relationships with inmates, offenders, or clients of the Department. This includes communication through written correspondence, telecommunications and social interactions.
>
> (4) An employee may not allow inmates to contact or visit them for any purpose while off duty.

ECF No. 63-8 at 6–7.

On December 22, 2016, Plaintiff was terminated from her position as a senior parole and probation agent because she had unauthorized contact with an inmate in a correctional facility, failed to disclose the contact, and made false statements during an investigation into the matter, in violation of the DPSCS Standards of Conduct. ECF No. 63-7 at 2, ¶¶ 4–5; ECF No. 63-8 at 2–8. The unauthorized contact occurred on August 6, 2016, when Plaintiff accepted a telephone call on her personal cell phone from Phillip Wise, an inmate in the Baltimore Pre-Release Unit at the time. ECF No. 63-8 at 2. During the eight-minute telephone call, Plaintiff relayed personal information, such as her new assignment to the Westminster office and her upcoming birthday and advised Mr. Wise not to call her "because you know why. I don't want to get in trouble." *Id.* Plaintiff also encouraged Mr. Wise to write to her and verified that he had her home mailing address. *Id.* Plaintiff failed to report this contact to her supervisor or anyone in the chain of command. *Id.* at 5.

On November 22, 2016, a DPSCS analyst with the Intelligence and Investigation Division, Nicholas Weikel, learned of the conversation when conducting routine monitoring of inmate phone

calls.[2] *Id.*; *see* ECF No. 63-9 at 5–6. Mr. Weikel reported the contact and the matter was assigned to Detective Johnnathan Wright for investigation. ECF No. 63-8 at 2–3. Detective Wright's preliminary investigation established that Plaintiff's personnel file did not contain written documentation authorizing communication with Mr. Wise or any other inmate and that Plaintiff had signed an acknowledgement of the DPSCS Standards of Conduct. *Id.* at 3. Plaintiff's records also confirmed her home address and verified that her personal cell phone number was the number Mr. Wise had contacted. *Id.*

On December 6, 2016, Detective Wright interviewed Plaintiff about the phone call. *Id.* at 3–4. Plaintiff denied having any contact with Mr. Wise until she was shown a photo of him and specifically asked whether she had had a telephone conversation with him. *Id.* at 4. Plaintiff stated that she had accepted Mr. Wise's phone call but told him she could not speak with him and hung up promptly. *Id.* She denied that she engaged in any further conversation with Mr. Wise during the call. *Id.*

On December 16, 2016, Joseph Clocker, Acting Director of DPP and Plaintiff's appointing authority, conducted a mitigation conference with Plaintiff. *Id.* During the conference, Plaintiff denied giving Mr. Wise her home address and reiterated that she told him he could not call her. *Id.* However, it was noted that Plaintiff had responded to an equipment check on December 5, 2016, in which she answered "no" to a question about having contact with inmates. *Id.* Plaintiff denied having any sort of intimate relationship with Mr. Wise and explained that Mr. Wise had

---

[2] The Intelligence and Investigation Division routinely reviews outgoing inmate phone calls on a monthly basis. ECF No. 63-9 at 5. The software the Division uses identifies phone calls made to DPSCS employees to monitor improper fraternization. *Id.* In the summer and fall of 2016, a software issue resulted in a backlog of calls to be monitored, which resulted in Plaintiff's unauthorized contact going undetected until November 22, 2016, when the call was monitored. *Id.* at 6.

previously performed work on her home, which was the extent of the relationship. *Id.* at 4–5. After considering the evidence, Mr. Clocker concluded that Plaintiff violated several provisions of the DPSCS Standards of Conduct as well as provisions of the Code of Maryland Regulations and the DPSCS Executive Directive on employee-inmate communication. *Id.* at 5–7. In particular, Mr. Clocker determined that Plaintiff had violated the following provisions of the DPSCS Standards of Conduct: Section II.K(4), relating to insubordination;[3] Section II.S(1), relating to reports;[4] and, Section II.DD, relating to unauthorized contact with inmates, offenders, or clients as described above. *Id.* at 6. Mr. Clocker submitted his recommendation for termination, and it was approved by DPSCS Secretary Stephen Moyer on December 20, 2016. *Id.* at 8–10. Plaintiff's termination was effective on December 22, 2016. ECF No. 63-7 at 2, ¶ 4.

Pursuant to section 11-109 of the State Personnel and Pensions Article of the Maryland Code, Plaintiff appealed her termination and the case was referred to OAH for a hearing before an ALJ. *Id.* ¶ 6. After conducting an evidentiary hearing, the ALJ issued a written decision on June 5, 2017, concluding that Plaintiff's termination was proper. ECF No. 63-9 at 17. Plaintiff petitioned the Circuit Court for Baltimore City for review and, on June 8, 2018, the court affirmed the ALJ's decision in a written decision. ECF No. 63-10.

---

[3] Section II.K(4) provides: "An employee shall cooperate with a superior or other person designated to conduct an investigative procedure. An employee shall answer all questions truthfully and to the full extent of his/her knowledge due to security purposes." ECF No. 63-8 at 6.

[4] Section II.S(1) provides in relevant part: "An employee may not make any false oral or written statement or misrepresent any material fact, under any circumstance, with the intent to mislead any person or tribunal. Reports submitted by employees shall be clear, concise, factual and accurate." ECF No. 63-8 at 6.

### D. Other Allegations

In addition to the primary allegations relating to denial of promotions, denial of the transfer request, and termination, Plaintiff also makes several other allegations in her claim of retaliation. In October 2015, Plaintiff "observed her supervisor, Rubin, hiding around the corner listening to her conversation with an offender." ECF No. 11 at 15, ¶ 132. Around this time, Plaintiff also learned that Rubin "watched [Plaintiff] and another Black colleague on the surveillance cameras." *Id.* Another supervisor, Robinson, also told agents not to speak with Plaintiff. *Id.* ¶ 133. In November 2015, Plaintiff received a "concerns memorandum" from a different supervisor, Hubble, after Plaintiff informed Hubble of deficiencies in an audit. *Id.* at 16, ¶ 138. In November 2015, March 2016, and June 2016, Plaintiff observed documents in her personnel file that she believed were rescinded, and she was not permitted to make copies. *Id.* at 16–17, ¶¶ 135, 141, 149.

### PROCEDURAL BACKGROUND

According to her Complaint, Plaintiff filed at least nine Charges of Discrimination against DPSCS with the "EEO,"[5] and/or the Equal Employment Opportunity Commission ("EEOC") between 2010 and 2016. ECF No. 11 at 3–10, ¶¶ 23, 28, 33, 48, 60, 63, 66, 82, 86. However, this Court has previously determined that the June 2, 2016 Charge is the "operative" one. ECF No. 30 at 8. Plaintiff filed the June 2, 2016 Charge with the Maryland Commission on Civil Rights and the EEOC, alleging retaliation dating from November 17, 2015 through March 1, 2016. ECF No. 20-2. In the Charge, Plaintiff stated that she was issued a disciplinary memorandum on November

---

[5] Plaintiff repeatedly references the "EEO" in her Second Amended Complaint. ECF No. 11 at 3, ¶ 23. The Court understands this to be a reference to the DPSCS Equal Employment Opportunity office.

17, 2015 and that she filed an appeal to challenge her work location assignment in March 2016. *Id.* Plaintiff asserted that DPSCS failed to provide her with a valid reason for the discipline and failed to respond to her appeal. *Id.* The EEOC then issued Plaintiff a "Notice of Suit Rights" letter.[6] ECF No. 11 at 2, ¶ 8.

On August 30, 2016, after exhausting her administrative remedies, Plaintiff filed suit *pro se* in this Court. ECF No. 1. In addition to DPSCS, the initial Complaint named as defendants Stephen T. Moyer, Secretary of DPSCS; Joseph Clocker, DPP Director; Brenda Miller, "Human Resources, DPSCS"; and James Fox, "Employee Relations, Department of Budget and Management." *Id.* Plaintiff filed her First Amended Complaint *pro se* on October 11, 2016, adding Governor Larry Hogan and David Brinkley, Secretary of the Maryland Department of Budget and Management. ECF No. 3. On January 10, 2017, Plaintiff filed her Second Amended Complaint through counsel and named only DPSCS. ECF No. 11. Plaintiff's Second Amended Complaint alleges that she suffered race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, age discrimination in violation of the ADEA, and retaliation in violation of the ADEA and Title VII in her employment with DPSCS. *Id.*

On April 21, 2017, Defendant filed a pre-discovery motion to dismiss. ECF No. 20. On May 26, 2017, Plaintiff filed an opposition, ECF No. 25, and Defendant filed a reply on June 21, 2017, ECF No. 29. In an order dated August 18, 2017, this Court dismissed all claims set forth in the Second Amended Complaint except Plaintiff's claim of retaliation.[7] ECF No. 31, ¶ 2.

---

[6] The Court notes that Plaintiff has neither provided the date of the Notice nor produced the Notice of Right to Sue.

[7] On October 13, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 36.

On January 2, 2019, Defendant filed its Motion seeking summary judgment against Plaintiff for her claim of retaliation in violation of Title VII and the ADEA. ECF No. 63. On January 18, 2019, Plaintiff filed an opposition. ECF No. 66. Defendant did not file a reply and the time to do so has since passed.

This matter is now fully briefed, and the Court has reviewed Defendant's Motion as well as the response thereto. For the foregoing reasons and pursuant to Federal Rule of Civil Procedure 56(a), Defendant's Motion (ECF No. 63) is GRANTED.

**DISCUSSION**

**A. Standard of Review**

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor

of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 249). Thus, "to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Moss v. Parks Corp.*, 985 F.2d 736, 738 (4th Cir. 1993) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)).

## B. Defendant's Motion for Summary Judgment

Defendant argues that it is entitled to summary judgment because Plaintiff has failed to establish a *prima facie* case for her retaliation claim. Specifically, Defendant contends that many of the alleged actions do not rise to the level of adverse employment action sufficient to support a

claim of retaliation and that the actions which arguably do rise to a sufficient level were not causally connected to any protected activity. ECF No. 63 at 1–2. Additionally, Defendant contends that there were legitimate, non-retaliatory reasons for its actions. *Id.* at 2.

The Plaintiff in this matter is *pro se*. The Court liberally construes complaints filed by pro se plaintiffs. *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012). Pro se lawsuits "represent the work of an untutored hand requiring special judicial solicitude." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985). However, pro se lawsuits "do[ ] not transform the court into an advocate." *Weller v. Dep't of Soc. Servs. for Balt.*, 901 F.2d 387, 391 (4th Cir. 1990).

Title VII and the ADEA prohibit retaliation against an employee because the employee has "opposed" an "unlawful employment practice." 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). Plaintiffs may prove retaliation through "two 'avenues of proof'": (1) direct or indirect evidence, or (2) the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc)). "It is left to the plaintiff's discretion whether to proceed by direct and indirect evidence or by mean[s] of the *McDonnell Douglas* burden-shifting framework." *Id.* (citing *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 n.4 (4th Cir. 2005)). To prove retaliation, "plaintiffs are limited to 'traditional principles of but-for causation' and must be able to prove that 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

14

1. Plaintiff's Allegations Relating To Events Preceding August 7, 2015 Are Time-Barred.

Preliminarily, before addressing Plaintiff's claim of retaliation, the Court will consider Defendant's argument that the Court should decline to consider all allegations relating to events prior to August 7, 2015 as they are time-barred. ECF No. 63-2 at 10–12.

"Before a plaintiff may file suit under Title VII or the ADEA, [s]he is required to file a charge of discrimination with the EEOC." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Both Title VII and the ADEA require the complainant to file a charge within a prescribed amount of time. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1). "'The basic limitations period is 180 days after the alleged unlawful employment practice. However, the limitations period is extended to 300 days when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.' The same limitation periods apply regarding ADEA claims." *Jones*, 551 F.3d at 300 (quoting *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998)).

In the "Administrative Procedure" section of her Second Amended Complaint, Plaintiff cited the June 2, 2016 Charge and the resulting right-to-sue letter as an apparent basis for her claims. ECF No. 11 at 2–3, ¶¶ 7–9. As a result, this Court determined that the June 2, 2016 Charge was the "operative" one. ECF No. 30 at 8. Maryland is a "deferral" jurisdiction and the appropriate enforcement agency is the Maryland Commission on Civil Rights. *Richardson v. Md. Transit Admin.*, RDB-18-0884, 2019 WL 1002597, at *4 (D.Md. Mar. 1, 2019). Because Plaintiff's June 2, 2016 Charge was filed with the Maryland Commission on Civil Rights, the 300-day period applies in this case. Thus, the Court will consider only allegations falling within the 300-day time frame extending from the filing date of June 2, 2016 back to August 7, 2015. Allegations pre-

dating August 7, 2015 will not be considered as they are time-barred pursuant to Title VII and the ADEA.

2. Plaintiff Cannot Establish Retaliation Under The *McDonnell Douglas* Burden-Shifting Framework.[8]

As noted, plaintiffs are entitled to prove retaliation by presenting direct and indirect evidence of retaliation or by way of the *McDonnell Douglas* framework. *Foster*, 787 F.3d at 249. Here, Plaintiff has not alleged acts of direct discrimination. ECF No. 30 at 25. Thus, the Court will analyze Plaintiff's retaliation claim under the burden-shifting framework of *McDonnell Douglas*. *See Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 550–51 (4th Cir. 2006). Under that framework, if Plaintiff states a *prima facie* case of retaliation, the burden shifts to Defendant to show that it had a legitimate, non-retaliatory reason for its contested action. *See id.* at 551. If Defendant makes such a showing, the burden then shifts back to Plaintiff to show that the stated reason was pretextual and that retaliation was the "actual reason" for the contested action. *See Foster*, 787 F.3d at 253–54.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove that "(1) the plaintiff engaged in a protected activity . . . ; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011) (quoting *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997)). The same elements are applicable to prove retaliation under the ADEA. *Royster v. Gahler*, 154 F.Supp.3d 206, 234 (D.Md. 2015).

---

[8] In her opposition, Plaintiff includes a section titled "Hostile Work Environment." ECF No. 66 at 11–16. Because a claim for hostile work environment was not raised in the Second Amended Complaint, the Court will not address Plaintiff's arguments on this point.

There is no question that Plaintiff engaged in protected activity in this case. According to her Second Amended Complaint, Plaintiff filed at least four charges of discrimination during the relevant time period, from August 2015 through June 2016. ECF No. 11 at 8–10, ¶¶ 63, 66, 82, 86. Defendant challenges, however, whether based on the factual record construed in a light most favorable to Plaintiff, the actions alleged rise to the level of adverse employment action and, if so, whether Plaintiff has shown a causal connection between the protected activity and the adverse employment actions. ECF No. 63-2 at 14–21.

a. Adverse Employment Action

"To prevail on a Title VII claim [or ADEA claim], 'the existence of some adverse employment action is required." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Westmoreland v. Prince George's Cty., Md.*, 876 F.Supp.2d 594, 604–05 (D.Md. 2012) (citations and internal quotation marks omitted). "[A]lthough actions short of termination may constitute an adverse employment action within the meaning of [Title VII or the ADEA] . . . not everything that makes an employee unhappy is an actionable adverse action." *Settle v. Balt. Cty.*, 34 F.Supp.2d 969, 989 (D.Md. 1999) (quoting *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997)) (internal quotation marks omitted).

Plaintiff alleges that she suffered several adverse employment actions: (1) denial of promotion to various positions, including Parole and Probation Field Supervisor I, Parole and Probation Regional Administrator, and Correctional Hearing Officer I; (2) denial of transfer from the DPP Westminster office to an office in Baltimore City; and (3) termination. ECF No. 11 at 16, ¶¶ 139, 142–43; ECF No. 66 at 3–11. Plaintiff also alleges that: (1) a supervisor eavesdropped

on her conversation with an offender and surveilled Plaintiff on video cameras, ECF No. 11 at 15, ¶ 132; (2) a different supervisor advised agents not to speak to Plaintiff, *id.* ¶ 133; (3) Plaintiff received a "concerns memorandum" after informing a supervisor of deficiencies in an audit, *id.* at 16, ¶ 138; and (4) documents that were rescinded remained in Plaintiff's personnel file, *id.* at 16–17, ¶¶ 135, 141, 149. Defendant challenges whether these alleged actions, with the exception of the denial of promotions and termination, rise to the level of adverse employment action. ECF No. 63-2 at 15–17. The Court will address each alleged adverse action.

### *Actions and Comments by Supervisors*

In her Second Amended Complaint, Plaintiff alleges that she suffered adverse employment actions by two supervisors, Rubin and Robinson, in October 2015. ECF No. 11 at 15, ¶¶ 132–33. According to Plaintiff, Rubin "hid[ ] around the corner listening to [Plaintiff's] conversation with an offender" and "watched [Plaintiff] and another Black colleague on the surveillance cameras." *Id.* ¶ 132. Robinson "told other agents not to speak to Plaintiff." *Id.* ¶ 133. "Although [the] . . . 'antiretaliation provision[s of Title VII and the ADEA] must be construed to cover a broad range of employer conduct,' not every uncomfortable moment in the workplace will constitute an adverse action." *Thorn v. Sebelius*, 766 F.Supp.2d 585, 600 (D.Md. 2011) (quoting *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011)). "[T]he anti-retaliation provision of Title VII [and the ADEA] does not protect against petty slights, minor annoyances, and simple lack of good manners." *Id.* at 603 (citations and internal quotation marks omitted). Although the actions and comments of her supervisors may have been uncomfortable for Plaintiff, they "amount to nothing more than unactionable 'personal slights'" and do not rise to the level of adverse employment actions because they would not "dissuade a reasonable employee from lodging a complaint of

discrimination." *Id.* (quoting *Adams v. Upper Chesapeake Med. Ctr.*, No. AMD 08-346, 2009 WL 997103, at *4 (D.Md. Apr. 14, 2009)).

### Concerns Memorandum and Documentation in Personnel File

Plaintiff also alleges that the "concerns memorandum" she received from her supervisor, Hubble, and the documentation that remained in her personnel file were adverse employment actions. ECF No. 11 at 16–17, ¶¶ 135, 138, 141, 149. Both actions fail to qualify as adverse because "[t]here is no indication in the record that [they] . . . had any tangible effect on the terms and conditions of [Plaintiff]'s employment." *Thorn*, 766 F.Supp.2d at 599. Additionally, with regard to the "concerns memorandum," in *Thorn*, this Court held that a counseling letter issued to the plaintiff was not an adverse employment action because it "did not actually implement any discipline" and was "akin to a poor performance review or reprimand, both of which are generally not adverse actions." *Id.* at 598.

### Denial of Transfer

Plaintiff's allegation that the denial of her transfer request was an adverse employment action also fails. "An employer's failure to promote an employee constitutes an adverse employment action, but a mere refusal to grant a transfer that an employee desires does not qualify as an adverse employment action unless the decision 'had some significant detrimental effect' on the employee." *Wagstaff v. City of Durham*, 233 F.Supp.2d 739, 744 (M.D.N.C. 2002) (quoting *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)).

Here, Plaintiff has not suffered any "significant detrimental effect" and she has also failed to show that she was eligible for transfer under the DPSCS Voluntary Transfer Policy at the time of request. Plaintiff contends that refusal to grant her transfer resulted in a lengthy commute and stress on her vehicle, but these are neither significant detrimental effects on the terms and

conditions of her employment, nor are they considered "circumstances of extreme hardship" sufficient to warrant transfer under the policy. ECF No. 63-12 at 4 ("Under circumstances of extreme hardship, the Deputy Secretary for Operations may make an exception to the two year waiting period. Such hardships must be documented and must have developed subsequent to the employee accepting their current position. *Under no circumstances will pre-existing conditions/circumstances or commuting distance be considered as reason for transfer prior to the two year requirement.*" (emphasis added)). Furthermore, it is clear under the policy that Plaintiff was not eligible for voluntary transfer at the time of request in January 2016 because she had only been in the senior parole and probation agent position and the Westminster office since March 2015. ECF No. 63-8 at 2; ECF No. 63-12 at 3 ("An employee must have two years of service that includes the probationary period in their current position and location before requesting an initial transfer.").[9]

### Denial of Promotions and Termination

Finally, Plaintiff alleges that the denial of promotion to several positions and her ultimate termination were adverse employment actions. ECF No. 66 at 3–5, 6–11. Defendant does not contest that these actions were adverse, but instead argues that there is no causation between the actions and Plaintiff's protected activity. ECF No. 63-2 at 17–21. Because failing to promote and firing are "tangible employment actions" that can give rise to liability under Title VII and the

---

[9] To this point, Plaintiff disagrees that the Voluntary Transfer Policy governed her transfer request. ECF No. 66 at 5. Instead, Plaintiff cites to DPSCS General Order 10-001, which sets forth Transfer Eligibility Criteria in Section V and states: "(a) Initial transfer. An employee shall be eligible for transfer upon completion of two consecutive years of employment with the Division." ECF No. 66, Ex. B. Even if Plaintiff is correct and this order governed her transfer request, Plaintiff would still have been ineligible for transfer as she had not completed two consecutive years of employment in January 2016 after only being reinstated to state employment in March 2015.

ADEA, the Court will treat these actions as adverse. *Boone*, 178 F.3d at 256 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

   b.  Causal Connection

In addition to proving that the employer acted adversely, a plaintiff must also show that the protected activity was causally connected to the adverse action. *Okoli*, 648 F.3d at 223. This causation requirement "requires [the plaintiff] to demonstrate not only a causal connection between his opposition and his termination, but that his opposition was the 'but for' cause of that termination." *Noel v. United Parcel Serv., Inc.*, PWG-13-1138, 2014 WL 4452667, at *8 (D.Md. Sept. 9, 2014) (citation omitted).

"[B]oth this Court and the United States Court of Appeals for the Fourth Circuit have held that proximity in time between the protected activity and the adverse employment action may be sufficient to establish the causation requirement." *McGrath-Malott v. Maryland*, 565 F.Supp.2d 656, 671 (D.Md. 2008). "[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). "Generally, however, the passage of time alone cannot provide proof of causation unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'" *Pepper v. Precision Valve Corp.*, 526 F.App'x 335, 337 (4th Cir. 2013) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). A "significant lapse of time between the protected activity . . . and [the adverse employment action] does not support an inference of retaliation." *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F.App'x 466, 469 (4th Cir. 2015) (finding no causal connection where there was a nine month lapse between plaintiff's complaint and his termination); *see also Clark Cty. Sch. Dist.*,

532 U.S. at 273–74 (finding no causal connection where there was a twenty month lapse between Plaintiff's EEOC complaint and her transfer); *Pepper*, 526 F.App'x at 337 (finding no causal connection where there was a ten month lapse between plaintiff's filing of a lawsuit and his termination); *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F.App'x 229, 233 (4th Cir. 2006) (finding no causal connection where there was a three or four month lapse between plaintiff's protected activity and his termination). Additionally, "[t]o prove the causal element, Plaintiff *must* establish that Defendant had knowledge of Plaintiff's [protected activity] before committing the alleged act of retaliation." *Ashton ex rel. Ashton v. Okosun*, 266 F.Supp.2d 399, 407 (D.Md. 2003) (citations omitted).

Here, Plaintiff is unable to prove a causal connection between her protected activity and the denial of promotions or her termination. First, with regard to the denial of promotions, Plaintiff is able to show temporal proximity between several of her charges of discrimination and the denial of promotions, but she is unable to show that the Human Resources analysts responsible for determining qualification for open positions were aware of her protected activity or that they exhibited any discriminatory animus. *Jones*, 629 F.App'x at 470 ("To establish a causal link between the alleged animus and the adverse employment action, a plaintiff must demonstrate that the individuals who expressed animus played a role in the adverse employment action."); *Ashton*, 266 F.Supp.2d at 407 (holding that the plaintiff failed to establish a causal connection where her employer had no knowledge of any protected activity).

Plaintiff filed four charges of discrimination with the EEOC during the relevant time period: (1) an August 2015 charge for harassment, ECF No. 11 at 8, ¶ 63; (2) a September 2015 charge, "citing discrimination, harassment, and retaliation," *id.* ¶ 66; (3) the operative June 2, 2016 charge, "citing harassment, unequal terms and conditions of employment and disciplinary action,

and denial of transfer," *id.* at 9, ¶ 82; and (4) a June 6, 2016 charge, "citing retaliation, for protected activities and denial of promotional opportunities," *id.* at 10, ¶ 86. During that same time period, Plaintiff applied for three positions: reinstatement to Parole and Probation Field Supervisor I on August 28, 2015; Parole and Probation Regional Administrator on March 9, 2016; and Correctional Hearing Officer I on April 7, 2016. ECF No. 63-4 at 3. Records demonstrate that Plaintiff was scheduled for an interview for the Field Supervisor I position, but it is unclear whether she interviewed for the position. *Id.* However, Plaintiff was deemed "not qualified" for the Correctional Hearing Officer I and Regional Administrator positions and received letters of rejection for those positions dated June 24, 2016 and July 22, 2016, respectively. ECF Nos. 63-5, 63-6. Because Plaintiff had engaged in protected activity in close proximity to the rejection of her applications, the Court could infer a causal link. However, Plaintiff is unable to show that the two Human Resources analysts responsible for evaluating Plaintiff's applications and determining her qualification for the positions, Sharon Grant and Sandra Regler, were aware of Plaintiff's protected activity or expressed discriminatory animus. In fact, the evidence presented by the Deputy Director of the Human Resources Services Division for DPSCS demonstrates that Human Resources analysts "work independently" to evaluate an applicant's qualifications and "do not investigate or consider whether the applicant has filed any complaint of discrimination or opposed discriminatory behavior in the past." ECF No. 63-3 at 2, ¶ 3. Instead, analysts determine whether an applicant is qualified by evaluating the applicant against the required qualifications presented in the job announcement. *Id.* Therefore, Plaintiff is unable to demonstrate a causal connection between her protected activity and the denial of the promotions.

With regard to her termination, Plaintiff is also unable to demonstrate a causal connection because the nearly seven month lapse between Plaintiff's latest charge of discrimination on June

23

6, 2016 and her termination on December 22, 2016 negates an inference of causality. *Jones*, 629 F.App'x at 469. In *Pascual*, the United States Court of Appeals for the Fourth Circuit found that the three to four month time period between the plaintiff's complaints of harassment and termination was "too long to establish a causal connection by temporal proximity alone." 193 F.App'x at 233. Here, the nearly seven month lapse far exceeds that in *Pascual*.

Accordingly, where Plaintiff has not established any causal connection by temporal proximity or evidence of discriminatory animus, she has not presented sufficient evidence to satisfy the third element of the *McDonnell Douglas* framework and cannot make a *prima facie* case of retaliation.

c. Defendant's Legitimate, Non-Retaliatory Reasons For Its Actions

Assuming *arguendo* that Plaintiff has established a *prima facie* case of retaliation, the burden shifts to Defendant to show that it had legitimate, non-retaliatory reasons for declining to promote Plaintiff and for terminating her. This is a burden of production, not persuasion, meaning that Defendant merely has to provide evidence demonstrating that the declination to promote and the termination was not in retaliation for Plaintiff's charges of discrimination. *See Holland*, 487 F.3d at 214. Defendant carries this burden as to the denial of the promotions because it produced evidence showing that Plaintiff was deemed not qualified due to lack of experience. ECF Nos. 63-5, 63-6. Defendant also carries this burden as to Plaintiff's termination because it produced evidence that Plaintiff violated several provisions of the DPSCS Standards of Conduct when she had unauthorized contact with an inmate in a correctional facility, failed to disclose the contact, made a false statement in a report regarding contact with inmates, and made additional false statements during an investigation into the matter. ECF No. 63-7 at 2, ¶¶ 4–5; ECF No. 63-8 at 2– 8. Lastly, although it has been determined that the denial of Plaintiff's transfer request was not an

adverse employment action, the Court notes that, even if it was, Defendant denied the request for legitimate, non-retaliatory reasons. Defendant has shown that Plaintiff was not eligible for transfer according to the policy because she had not worked in her position or the Westminster location for two years at the time of the request and that Plaintiff's reasoning for the request was based on circumstances that occurred subsequent to Plaintiff's acceptance of the position, contrary to the spirit of the policy. ECF No. 63-11 at 4–8.

Because Defendant has carried the burden of producing evidence of legitimate, non-retaliatory reasons for its actions, the burden shifts to Plaintiff to show that Defendant's explanations are pretextual. As a practical matter, the burden to show pretext "merge[s] with the ultimate burden of persuading the court" that the plaintiff has been the victim of unlawful discrimination, which Plaintiff can accomplish by showing that Defendant's proffered explanations are "unworthy of credence." *Holland*, 487 F.3d at 214 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Here, Plaintiff has put forth insufficient evidence showing that Defendant's proffered legitimate explanations were false. With regard to denial of the promotions, Plaintiff attempts to discredit Defendant's reasoning by presenting her resume, transcripts, and certifications to demonstrate that she was qualified. ECF No. 66, Ex. A. Assuming *arguendo* that Plaintiff could create a weak issue of fact on this issue, "judgment as a matter of law [is] appropriate [where] a 'plaintiff create[s] only a weak issue of fact as to whether the employer's reasons were untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Holland*, 487 F.3d at 215 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). As discussed, Plaintiff has failed to establish any discriminatory animus on the part of the Human Resources analysts responsible for evaluating her application or any

nexus to discrimination. The evidence is uncontroverted that the Human Resources analysts were unaware of her protected activity and did not consider it when determining whether she was qualified for the promotions. ECF No. 63-3 at 2, ¶ 3. With regard to the denial of her transfer request and her termination, Plaintiff presents no evidence showing that Defendant's proffered explanations are false. Plaintiff's argument that General Order 10-001, rather than the Voluntary Transfer Policy, governs her request is without merit, as discussed above. Additionally, Plaintiff admits that she engaged in unauthorized contact with an inmate on August 6, 2016 and that she failed to report the contact to her supervisor, as required by policy. ECF No. 66 at 6. Based on the evidence in the record, no reasonable jury could conclude that Defendant's proffered explanations are "unworthy of credence." *Burdine*, 450 U.S. at 256.

Therefore, because Defendant has put forth evidence of legitimate, non-retaliatory bases for its actions and Plaintiff has failed to present any evidence sufficient to refute it or otherwise establish a genuine issue of material fact, Defendant is entitled to judgment as a matter of law on the claim of retaliation.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that, in the light most favorable to Plaintiff, there is insufficient evidence from which a jury could find in Plaintiff's favor on her retaliation claim. Therefore, Defendant's Motion (ECF No. 63) is GRANTED, and Plaintiff's Motion to Compel (ECF No. 56) and Motion for Leave to Amend Opposition to Summary Judgment (ECF No. 71) are DISMISSED as MOOT. A separate order will follow.

Date: 11 March 2019

A. David Copperthite
United States Magistrate Judge